9092

**FILED**
DEC X 4 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
Northern District of Illinois

CLEOLA MINOR, individually, and as )
Special Administrator of the Estate of KATIE )
DORSEY, deceased, )
        Plaintiff )   No.:
        -vs- )
UNITED STATES, WEST SUBURBAN )   07CV6824
MEDICAL CENTER, a corporation, )   JUDGE KENNELLY
 )   MAG. JUDGE COLE
        Defendants )

## COMPLAINT
### JURISDICTION & VENUE

1. That this is an action for personal injury and/or death against the United States of America, and therefore, the Court has original jurisdiction pursuant to 28 U.S.C.S 1346 (b)(1). Further, the plaintiff invokes pendant and ancillary jurisdiction of this Court to hear and decide claims arising under State law.

2. That the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

3. Venue is placed in this district because it is where the alleged incident occurred, as hereinafter set forth.

### PROCEDURAL HISTORY

1. On May 22, 2006, the plaintiff filed this medical malpractice action in Illinois State Court, County of Cook, case number 05-L-10008, Cleola Minor, individually and as Special Administrator of the estate of Katie Dorsey, deceased, vs. West Suburban Medical Center, a corporation, Thomas Staff, M.D., and Mark Loafman, M.D.

2. On September 1, 2006, the United States filed a notice of removal in the U.S. District Court for the Northern District of Illinois, Eastern Division, which proceeded as case number 06-C-4763. In its notice of removal, defendant, United States asserted that defendants Dr. Staff and Dr. Loafman were employees of the United States for Federal Tort Claims Act purposes.

3. On September 19, 2006, the U.S. District Court per the Honorable Elaine E. Bucklo substituted the United States as a defendant in place of Dr. Staff and Dr. Loafman, and dismissed the case without prejudice for failure to file an administrative claim pursuant to the Federal Tort Claims Act

4. That on October 2, 2006, the court remanded the case as to the defendant, West Suburban Medical Center to the State Court, where it was stayed pending the resolution of the Federal Tort Claims Act administrative claim.

5. That on October 16, 2006, the plaintiff brought her Federal Tort Claims Act claim. That it has been more than six months since this claim was brought, and there has been no resolution of the claim.

### COUNT I

Now comes the plaintiff, CLEOLA MINOR, individually, and as special administrator of the estate of KATIE DORSEY, deceased and for her Complaint in this Count I against the defendant, WEST SUBURBAN MEDICAL CENTER, a corporation, ( hereinafter "West Suburban"), states:

1. That the plaintiff, Cleola Minor is the daughter of the decedent, Katie Dorsey, and is the duly appointed special administrator of her estate.

2. That the plaintiff brings this Count pursuant to the Survival Act, 755 ILCS

5/27-6.

3. That on or about July 12, 2004, the defendant, West Suburban owned, operated, managed and controlled a certain hospital at 3 Erie Court, Oak Park, Cook County, Illinois, whereupon it invited members of the public to partake of its hospital care and services.

4. That on or about July 12, 2004, Katie Dorsey came to the defendant's emergency room and was admitted, with complaints of severe abdominal pain, and multiple episodes of diarrhea and vomiting.

5. That it then and there became and was the duty of defendant, West Suburban to exercise proper care for its patient, Katie Dorsey.

6. That notwithstanding its aforesaid duty, the defendant, West Suburban, by its agents, apparent agents, staff physicians, servants, and employees did then and there breach its aforesaid duty in one or more of the following ways:

- (A) Carelessly and negligently failed to diagnose her appendicitis;
- (B) Carelessly and negligently failed to obtain a recommended surgical consultation;
- (C) Carelessly and negligently failed to treat her appendicitis;
- (D) Carelessly and negligently discharged a patient in an unstable condition;
- (E) Carelessly and negligently failed to notify the attending physician of the patient's unstable and worsening condition.

7. That as a direct and proximate result of one or more of the aforesaid negligent acts or omissions, Katie Dorsey sustained injuries, including, but not limited to a perforated necrotic appendix and sepsis, and she sustained conscious pain and suffering, and incurred medical expenses in treatment of her condition until her death.

WHEREFORE, the plaintiff, Cleola Minor, individually and as special administrator of the estate of Katie Dorsey, deceased, demands judgment against West Suburban for in the amount of three million dollars, and for costs of this suit.

## COUNT II

Now comes the plaintiff, Cleola Minor, individually and as special administrator of the estate of Katie Dorsey, deceased, and for her Complaint in this Count II against the defendant, United States, alleges:

1.-2. That the plaintiff realleges Paragraphs One and Two of Count I to stand as Paragraphs One and Two of this Count II.

3. That on or about July 12, 2004, Thomas Staff, M.D., employee of the defendant, United States, did undertake to provide medical care and treatment to Katie Dorsey at the West Suburban Medical Center in Oak Park, Cook County, Illinois, and to diagnose and treat her illness and ailments.

4. That by virtue of the aforesaid, there arose a duty on the part of the defendant, United States by its employee, Thomas Staff, M.D. to provide proper medical care within the standard of care to Katie Dorsey.

5. That the defendant, United States by its employee, Thomas Staff, M.D., did then and there breach this aforesaid duty in one or more of the following ways:

  A. Carelessly and negligently failed to diagnose her appendicitis;

  B. Carelessly and negligently failed to obtain a surgical consultation for Katie Dorsey;

  C. Carelessly and negligently failed to treat her appendicitis;

  D. Carelessly and negligently failed to provide criteria to the West Suburban Medical Center staff for preventing Katie Dorsey's unsafe discharge in an

unstable condition.

6. That the plaintiff realleges Paragraph Seven of Count I to stand as Paragraph Six of this Count II.

WHEREFORE, the plaintiff, Cleola Minor, individually and as special administrator of the estate of Katie Dorsey, demands judgment against defendant, United States in the amount of three million dollars and costs of this suit.

## COUNT III

Now comes the plaintiff, Cleola Minor, individually and as special administrator of the estate of Katie Dorsey, deceased, and for her Complaint in this Count III against the defendant, United States, alleges:

1.-2. That the plaintiff realleges Paragraphs One and Two of Count I to stand as Paragraphs One and Two of this Count III.

3. That on or about July 15, 2004, the defendant, United States, by its' employee, Mark Loafman, M.D., did undertake to provide medical care and services to Katie Dorsey at his office in Oak Park, Cook County, Illinois, and to diagnose and treat her illnesses and ailments.

4. That by virtue of the aforesaid, there arose a duty on the part of defendant, United States by its employee, Mark Loafman, M.D., to provide proper medical care within the standard of care to Katie Dorsey.

5. That the defendant, United States by its employee, Mark Loafman, M.D., did then and there breach this aforesaid duty in one or more of the following ways:

    A. Carelessly and negligently failed to diagnose and treat her appendicitis;

      B.      Carelessly and negligently failed to investigate the signs and symptoms of her hermodynamic compromise;

      C.      Carelessly and negligently failed to perform a physical examination of Katie Dorsey;

      D.      Carelessly and negligently failed to treat her appendicitis;

      E.      Carelessly and negligently failed to order diagnostic tests to determine if there was a need for surgical consultation.

6.      That the plaintiff realleges Paragraph Seven of Count I to stand as Paragraph Six of this Count III.

WHEREFORE, the plaintiff Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, demands judgment against defendant United States in the amount of three million dollars and for costs of suit.

## COUNT IV

Now comes the plaintiff, Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, deceased, and for her Complaint in this Count IV against the defendant, WEST SUBURBAN MEDICAL CENTER, a corporation, ( hereinafter " West Suburban"), states:

1.      That the plaintiff, Cleola Minor is the daughter of the decedent, Katie Dorsey, and is the duly appointed special administrator of her estate.

2.      That the plaintiff brings this Count pursuant to the Wrongful Death Act, 740 ILCS 180/1, et. seq.

3.-6.      That the plaintiff realleges Paragraphs Three through Six of Count I to stand as Paragraphs Three through Six of this Count IV.

7. That as a direct and proximate result of one or more of the aforesaid negligent acts or omissions, Katie Dorsey died on September 18, 2004.

8. That Katie Dorsey was survived at the time of her death by her daughters, Cleola Minor, and Linda Towns, and by her sons, Samuel Minor, Jimmy Minor, and Alex Minor, all of whom have been deprived of the decedent's society, love, affection, support and services by reason of her death. That the estate of Katie Dorsey incurred funeral expenses in connection with her death.

WHEREFORE, the plaintiff, Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, demands judgment against the defendant West Suburban in the amount of three million dollars and costs of suit.

### COUNT V

Now comes the plaintiff, Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, deceased, and for her Complaint in this Count V against the defendant, United States, alleges:

1. That the plaintiff realleges Paragraph One of Count II to stand as Paragraph One of this Count V.

2. That the plaintiff realleges Paragraph Two of Count IV to stand as Paragraph Two of this Count V.

3.-5. That the plaintiff realleges Paragraphs Three through Five of Count II to stand as Paragraphs Three through Five of this Count V.

6.-7. That the plaintiff realleges Paragraphs Seven and Eight of Count IV to stand as Paragraphs Six and Seven of this Count V.

WHEREFORE, the plaintiff, Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, demands judgment against the defendant United States in the amount of three million dollars, and for costs of suit.

### COUNT VI

Now comes the plaintiff, Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, deceased, and for her Complaint in this Count VI against the defendant, United States, alleges:

1. That the plaintiff realleges Paragraph One of Count III to stand as Paragraph One of this Count VI.

2. That the plaintiff realleges Paragraph Two of Count IV to stand as Paragraph Two of this Count VI.

3.-5. That the plaintiff realleges Paragraphs Three through Five of Count III to stand as Paragraphs Three through Five of this Count VI.

6.-7. That the plaintiff realleges Paragraphs Seven and Eight of Count IV to stand as Paragraphs Six and Seven of this Count VI.

WHEREFORE, the plaintiff, Cleola Minor, individually, and as special administrator of the estate of Katie Dorsey, demands judgment against defendant United States in the amount of three million dollars and for costs of suit.

_____
Michael A. Kaczmarek
BARRY L. GORDON & ASSOCIATES P.C.
205 W. Randolph St. # 950
Chicago, Illinoiss 60606
(312)-263-5445

9092

IN THE UNITED STATES DISTRICT COURT
Northern District of Illinois

| | |
|---|---|
| CLEOLA MINOR, individually, and as Special Administrator of the Estate of KATIE DORSEY, deceased,<br>        Plaintiff<br>        -vs-<br>UNITED STATES, WEST SUBURBAN MEDICAL CENTER, a corporation,<br>        Defendants | ) ) ) NO: ) ) ) ) ) ) |

### AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622

I, MICHAEL A. KACZMAREK, being duly sworn on oath hereby states:

1. That I am one of the attorneys representing the plaintiff. That I have consulted and reviewed the facts of this case with a health professional whom I reasonably believe is knowledgeable in the relevant issues involved in the particular action, who practices or has practiced within the last 5 years in the same area of health care or medicine that is at issue in the particular action, and who meets the expert witness standards set forth in paragraphs (a) through (d) of Section 8-2501. That the reviewing health professional has determined in a written report after review of the medical records that there is a reasonable and meritorious cause for the filing of this action. That I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of this action. That the written report is from a physician licensed to practice medicine in

all its branches, and who is qualified by experience with the standard of care methods, procedures, and treatments relevant to the allegations at issue.

*Michael A. Kaczmarek* (signature)

Michael A. Kaczmarek
BARRY L. GORDON & ASSOCIATES P.C.
205 W. Randolph St. # 950
Chicago, Illinois 60606
(312) 263-5445

Subscribed and Sworn to before me
this 4th day of December 2007

*(Notary seal: OFFICIAL SEAL, BARRY L. GORDON, MY COMMISSION EXPIRES MAY 10, 2011, STATE OF ILLINOIS)*

Notary Public

## CERTIFICATE OF MERITORIOUSNESS PURSUANT TO 735 ILCS 5/2-622

**Certificate as to West Suburban Medical Center**

I, Thomas Naughton M. D., address of 5000 W. National Avenue, Milwaukee, Wisconsin, Wisconsin physician license number 35299, board certified in family practice and geriatrics, do hereby state:

That I am board certified in family practice and geriatric medicine, and have been practicing the same extensively for the past 21 years. During the early 1990's, I was a faculty member and program director of a family practice residency program in Milwaukee, Wisconsin. Currently, I am a clinical associate professor in the division of geriatrics at the Medical College of Wisconsin. In addition, I have an Adjunct appointment in the School of Nursing and the Physician Assistant Training Program at Marquette University.

That I am qualified by education, training, and experience with the standard of care methods, procedures, and treatments relevant to the allegations in issue. That I have reviewed the following records in regard to the care rendered to Katie Dorsey:
1) West Suburban Medical Center,
2) Dr. Mark Loafman/ Community Wellness Center,
3) Rush-Oak Park Hospital,
4) Kindred Hospital,
5) Illinois Masonic Hospital,
6) Glenshire Nursing & Rehabilitation,
7) St. James Hospital,
8) Death Certificate.

In brief, Katie Dorsey was a 65 year old African American woman who presented to the West Suburban Hospital Emergency Department on the morning of July 12th, 2004 for evaluation of severe abdominal pain with multiple episodes of vomiting and diarrhea which began at 5:00 p.m. the day before. Her past medical history was significant for hypertension, diabetes mellitus, and previous surgeries including a hysterectomy and cholecystectomy. At the time of her ER presentation, Ms. Dorsey had the following vital signs: Blood Pressure 101/69, Heart Rate 78, Respiratory Rate 22, Temperature 98.1, and O2 Saturation 99%. Among other diagnostic and therapeutic interventions the emergency room physician ordered a CT Abdominal/Pelvic Scan with Rectal Contrast to rule out acute appendicitis. This revealed that " ... the appendix does not fill, difficult to exclude appendicitis. There is a questionable right-sided rectal mucosal thickening suggesting a possible mass". According to the ER physician's records, Ms. Dorsey's provisional diagnosis was Acute Abdominal Pain, Rule Out Acute Appendicitis. The ER physician had Ms. Dorsey admitted to the Family Medicine Service to obtain a surgical consultation.

Ms. Dorsey was evaluated by Dr. Staff, attending physician of the Family Medicine Service, at 6:45 p.m. on the evening of July 12th. Dr. Staff ordered a follow-up Complete Blood Count (CBC) and recommended that the patient be given a trial of fluids and if comfortable, Ms. Dorsey

could be discharged home. At 10:00 p.m., Ms. Dorsey had a fever of 101.4 degrees, and the results of the CBC revealed at elevated White Blood Cell Count of 16,600, along with a high percentage of neutrophils at 84%. Despite these abnormal findings, and without the surgical consultation having been obtained, Ms. Dorsey was discharged by the hospital staff.

Ms. Dorsey presented herself to Dr. Mark Loafman's office on July 15, 2004. Review of the Adult RN note revealed that the patient had been discharged from West Suburban Hospital 3 days ago for stomach pain which never resolved. Ms. Dorsey's vital signs revealed Blood Pressure 80/40, Heart Rate of 112, Temperature 96.9, with the patient reporting vomiting and diarrhea on July 14th. Dr. Loafman's note reported that Ms. Dorsey had been in West Suburban with questionable gastroenteritis. There is no documented physical examination by Dr. Loafman. Dr. Loafman recommended Ms. Dorsey to push fluids, and if unsuccessful, she was instructed to go to the Emergency Room for intravenous fluids.

On the following day, Ms. Dorsey presented herself to the Emergency Department of Rush Oak Park Hospital for evaluation of her abdominal pain. Initial abdominal x-ray series were obtained which revealed air fluid level with possible obstruction. Her initial diagnosis was Small Bowel Obstruction with Dehydration and Ms. Dorsey was directly admitted to the Intensive Care Unit where she received emergency Surgical and Infectious Disease consultation. During her hospital stay of 7-16-04 to 8-11-04, Ms. Dorsey underwent an Exploratory Laparotomy which revealed perforated cecal diverticula, acute necrotizing appendicitis, severe acute peritonitis with aspects of abscess formation, and she was requires to undergo a right colectomy. Her postoperative course was complicated by profound anemia requiring blood transfusions, severe respiratory distress requiring prolonged intubation, persistent fevers, hyperdynamic sepsis, bedside tracheostomy, tube feedings, and acute renal failure. Ms. Dorsey was subsequently transferred by Kindred Hospital (8-12-04 to 8-18-04) and Illinois Masonic Hospital (8-18-04 to 9-11-04) for ongoing care.

Ms. Dorsey was transferred to Glenshire Nursing & Rehabilitation Center on September 11, 2004. Her admitting History & Physical examination revealed the following diagnoses: 1) Sepsis, continue antibiotics; 2) Dysphagia, GI feeling; 3) Respiratory Failure, Ventilatory support; 4) Anemia, Epogen; 5) Decubiti Ulcer; wound care, and 6) Hypertension/ Renal Failure.

Ms. Dorsey was emergently admitted to St. James Hospital on September 17th after an apparent witnessed cardiopulmonary arrest during her hemodialysis session. She died on September 18, 2004. Her death certificate lists Septic Shock as the cause of death, with contributing causes of perforated bowels and kidney failure.

It is my opinion to a reasonable degree of medical certainty that the defendant West Suburban Medical Center violated the standard of care by not obtaining the recommended surgical consultation and by inappropriately discharging a medically unstable patient. Further, the defendant West Suburban Medical Center's physician and nursing staff violated the standard of care by failing to notify Dr. Staff of the patient's unstable and deteriorating condition, such as her developing a fever and increasing white blood cell count.

It is my opinion to a reasonable degree of medical certainty that Dr. Thomas Staff violated the standard of care by not obtaining a surgical consultation for Ms. Dorsey. Further, Dr. Staff violated the standard of care by not specifying criteria for preventing Ms. Dorsey's unsafe discharge in an unstable condition, such as fever, an elevated white blood cell count, and/or increasing pain.

It is my opinion to a reasonable degree of medical certainty that Dr. Mark Loafman violated the standard of care by not investigating the cause of Ms. Dorsey's signs and symptoms of hemodynamic compromise, including low blood pressure and elevated heart rate. Dr. Loafman violated the standard of care by not performing a physical examination, and by not ordering any diagnostic tests, which tests would have shown the need for surgical consultation.

To a reasonable degree of medical certainty, as a direct and proximate result of the aforesaid violations of the standard of care, Ms. Dorsey sustained an unacceptable delay in diagnosis, which tragically resulted in Ms. Dorsey experiencing and suffering the major complications of a perforated necrotic appendix. Based upon a reasonable degree of medical certainty, Ms. Dorsey could have avoided her complicated medical and surgical course had a timely surgical evaluation been obtained, with the likely diagnosis of acute appendicitis being appropriately treated by an appendectomy. It is my opinion to a reasonable degree of medical certainty that the aforesaid deviations from the standard of care proximately caused Ms. Dorsey's unfortunate death.

_Thomas M. Naughton, MD_

Thomas M. Naughton, M.D., M.P.H.
Clinical Associate Professor
Division of Geriatrics and the Department of Family & Community Medicine
The Medical College of Wisconsin

## CERTIFICATE OF MERITORIOUSNESS PURSUANT TO 735 ILCS 5/2-622

**Certificate as to Thomas Staff M. D.**

I, Thomas Naughton M. D., address of 5000 W. National Avenue, Milwaukee, Wisconsin, Wisconsin physician license number ___33299___, board certified in family practice and geriatrics, do hereby state:

That I am board certified in family practice and geriatric medicine, and have been practicing the same extensively for the past 21 years. During the early 1990's, I was a faculty member and program director of a family practice residency program in Milwaukee, Wisconsin. Currently, I am a clinical associate professor in the division of geriatrics at the Medical College of Wisconsin. In addition, I have an Adjunct appointment in the School of Nursing and the Physician Assistant Training Program at Marquette University.

That I am qualified by education, training, and experience with the standard of care methods, procedures, and treatments relevant to the allegations in issue. That I have reviewed the following records in regard to the care rendered to Katie Dorsey:
1) West Suburban Medical Center,
2) Dr. Mark Loafman/ Community Wellness Center,
3) Rush-Oak Park Hospital,
4) Kindred Hospital,
5) Illinois Masonic Hospital,
6) Glenshire Nursing & Rehabilitation,
7) St. James Hospital,
8) Death Certificate.

In brief, Katie Dorsey was a 65 year old African American woman who presented to the West Suburban Hospital Emergency Department on the morning of July 12th, 2004 for evaluation of severe abdominal pain with multiple episodes of vomiting and diarrhea which began at 5:00 p.m. the day before. Her past medical history was significant for hypertension, diabetes mellitus, and previous surgeries including a hysterectomy and cholecystectomy. At the time of her ER presentation, Ms. Dorsey had the following vital signs: Blood Pressure 101/69, Heart Rate 78, Respiratory Rate 22, Temperature 98.1, and O2 Saturation 99%. Among other diagnostic and therapeutic interventions the emergency room physician ordered a CT Abdominal/Pelvic Scan with Rectal Contrast to rule out acute appendicitis. This revealed that " ... the appendix does not fill, difficult to exclude appendicitis. There is a questionable right-sided rectal mucosal thickening suggesting a possible mass". According to the ER physician's records, Ms. Dorsey's provisional diagnosis was Acute Abdominal Pain, Rule Out Acute Appendicitis. The ER physician had Ms. Dorsey admitted to the Family Medicine Service to obtain a surgical consultation.

Ms. Dorsey was evaluated by Dr. Staff, attending physician of the Family Medicine Service, at 6:45 p.m. on the evening of July 12th. Dr. Staff ordered a follow-up Complete Blood Count (CBC) and recommended that the patient be given a trial of fluids and if comfortable, Ms. Dorsey

could be discharged home. At 10:00 p.m., Ms. Dorsey had a fever of 101.4 degrees, and the results of the CBC revealed at elevated White Blood Cell Count of 16,600, along with a high percentage of neutrophils at 84%. Despite these abnormal findings, and without the surgical consultation having been obtained, Ms. Dorsey was discharged by the hospital staff.

Ms. Dorsey presented herself to Dr. Mark Loafman's office on July 15, 2004. Review of the Adult RN note revealed that the patient had been discharged from West Suburban Hospital 3 days ago for stomach pain which never resolved. Ms. Dorsey's vital signs revealed Blood Pressure 80/40, Heart Rate of 112, Temperature 96.9, with the patient reporting vomiting and diarrhea on July 14th. Dr. Loafman's note reported that Ms. Dorsey had been in West Suburban with questionable gastroenteritis. There is no documented physical examination by Dr. Loafman. Dr. Loafman recommended Ms. Dorsey to push fluids, and if unsuccessful, she was instructed to go to the Emergency Room for intravenous fluids.

On the following day, Ms. Dorsey presented herself to the Emergency Department of Rush Oak Park Hospital for evaluation of her abdominal pain. Initial abdominal x-ray series were obtained which revealed air fluid level with possible obstruction. Her initial diagnosis was Small Bowel Obstruction with Dehydration and Ms. Dorsey was directly admitted to the Intensive Care Unit where she received emergency Surgical and Infectious Disease consultation. During her hospital stay of 7-16-04 to 8-11-04, Ms. Dorsey underwent an Exploratory Laparotomy which revealed perforated cecal diverticula, acute necrotizing appendicitis, severe acute peritonitis with aspects of abscess formation, and she was requires to undergo a right colectomy. Her postoperative course was complicated by profound anemia requiring blood transfusions, severe respiratory distress requiring prolonged intubation, persistent fevers, hyperdynamic sepsis, bedside trachesotomy, tube feedings, and acute renal failure. Ms. Dorsey was subsequently transferred by Kindred Hospital (8-12-04 to 8-18-04) and Illinois Masonic Hospital (8-18-04 to 9-11-04) for ongoing care.

Ms. Dorsey was transferred to Glenshire Nursing & Rehabilitation Center on September 11, 2004. Her admitting History & Physical examination revealed the following diagnoses: 1) Sepsis, continue antibiotics; 2) Dysphagia, GI feeling; 3) Respiratory Failure, Ventilatory support; 4) Anemia, Epogen; 5) Decubiti Ulcer, wound care, and 6) Hypertension/ Renal Failure.

Ms. Dorsey was emergently admitted to St. James Hospital on September 17th after an apparent witnessed cardiopulmonary arrest during her hemodialysis session. She died on September 18, 2004. Her death certificate lists Septic Shock as the cause of death, with contributing causes of perforated bowels and kidney failure.

It is my opinion to a reasonable degree of medical certainty that the defendant West Suburban Medical Center violated the standard of care by not obtaining the recommended surgical consultation and by inappropriately discharging a medically unstable patient. Further, the defendant West Suburban Medical Center's physician and nursing staff violated the standard of care by failing to notify Dr. Staff of the patient's unstable and deteriorating condition, such as her developing a fever and increasing white blood cell count.

It is my opinion to a reasonable degree of medical certainty that Dr. Thomas Staff violated the standard of care by not obtaining a surgical consultation for Ms. Dorsey. Further, Dr. Staff violated the standard of care by not specifying criteria for preventing Ms. Dorsey's unsafe discharge in an unstable condition, such as fever, an elevated white blood cell count, and/or increasing pain.

It is my opinion to a reasonable degree of medical certainty that Dr. Mark Loafman violated the standard of care by not investigating the cause of Ms. Dorsey's signs and symptoms of hemodynamic compromise, including low blood pressure and elevated heart rate. Dr. Loafman violated the standard of care by not performing a physical examination, and by not ordering any diagnostic tests, which tests would have shown the need for surgical consultation.

To a reasonable degree of medical certainty, as a direct and proximate result of the aforesaid violations of the standard of care, Ms. Dorsey sustained an unacceptable delay in diagnosis, which tragically resulted in Ms. Dorsey experiencing and suffering the major complications of a perforated necrotic appendix. Based upon a reasonable degree of medical certainty, Ms. Dorsey could have avoided her complicated medical and surgical course had a timely surgical evaluation been obtained, with the likely diagnosis of acute appendicitis being appropriately treated by an appendectomy. It is my opinion to a reasonable degree of medical certainty that the aforesaid deviations from the standard of care proximately caused Ms. Dorsey's unfortunate death.

_____
Thomas M. Naughton, M.D., M.P.H.
Clinical Associate Professor
Division of Geriatrics and the Department of Family & Community Medicine
The Medical College of Wisconsin

## CERTIFICATE OF MERITORIOUSNESS PURSUANT TO 735 ILCS 5/2-622

**Certificate as to Mark Loafman M. D.**

I, Thomas Naughton M. D., address of 5000 W. National Avenue, Milwaukee, Wisconsin, Wisconsin physician license number ___35297___, board certified in family practice and geriatrics, do hereby state:

That I am board certified in family practice and geriatric medicine, and have been practicing the same extensively for the past 21 years. During the early 1990's, I was a faculty member and program director of a family practice residency program in Milwaukee, Wisconsin. Currently, I am a clinical associate professor in the division of geriatrics at the Medical College of Wisconsin. In addition, I have an Adjunct appointment in the School of Nursing and the Physician Assistant Training Program at Marquette University.

That I am qualified by education, training, and experience with the standard of care methods, procedures, and treatments relevant to the allegations in issue. That I have reviewed the following records in regard to the care rendered to Katie Dorsey:
1) West Suburban Medical Center,
2) Dr. Mark Loafman/ Community Wellness Center,
3) Rush-Oak Park Hospital,
4) Kindred Hospital,
5) Illinois Masonic Hospital,
6) Glenshire Nursing & Rehabilitation,
7) St. James Hospital,
8) Death Certificate.

In brief, Katie Dorsey was a 65 year old African American woman who presented to the West Suburban Hospital Emergency Department on the morning of July 12th, 2004 for evaluation of severe abdominal pain with multiple episodes of vomiting and diarrhea which began at 5:00 p.m. the day before. Her past medical history was significant for hypertension, diabetes mellitus, and previous surgeries including a hysterectomy and cholecystectomy. At the time of her ER presentation, Ms. Dorsey had the following vital signs: Blood Pressure 101/69, Heart Rate 78, Respiratory Rate 22, Temperature 98.1, and O2 Saturation 99%. Among other diagnostic and therapeutic interventions the emergency room physician ordered a CT Abdominal/Pelvic Scan with Rectal Contrast to rule out acute appendicitis. This revealed that " ... the appendix does not fill, difficult to exclude appendicitis. There is a questionable right-sided rectal mucosal thickening suggesting a possible mass". According to the ER physician's records, Ms. Dorsey's provisional diagnosis was Acute Abdominal Pain, Rule Out Acute Appendicitis. The ER physician had Ms. Dorsey admitted to the Family Medicine Service to obtain a surgical consultation.

Ms. Dorsey was evaluated by Dr. Staff, attending physician of the Family Medicine Service, at 6:45 p.m. on the evening of July 12th. Dr. Staff ordered a follow-up Complete Blood Count (CBC) and recommended that the patient be given a trial of fluids and if comfortable, Ms. Dorsey

could be discharged home. At 10:00 p.m., Ms. Dorsey had a fever of 101.4 degrees, and the results of the CBC revealed at elevated White Blood Cell Count of 16,600, along with a high percentage of neutrophils at 84%. Despite these abnormal findings, and without the surgical consultation having been obtained, Ms. Dorsey was discharged by the hospital staff.

Ms. Dorsey presented herself to Dr. Mark Loafman's office on July 15, 2004. Review of the Adult RN note revealed that the patient had been discharged from West Suburban Hospital 3 days ago for stomach pain which never resolved. Ms. Dorsey's vital signs revealed Blood Pressure 80/40, Heart Rate of 112, Temperature 96.9, with the patient reporting vomiting and diarrhea on July 14th. Dr. Loafman's note reported that Ms. Dorsey had been in West Suburban with questionable gastroenteritis. There is no documented physical examination by Dr. Loafman. Dr. Loafman recommended Ms. Dorsey to push fluids, and if unsuccessful, she was instructed to go to the Emergency Room for intravenous fluids.

On the following day, Ms. Dorsey presented herself to the Emergency Department of Rush Oak Park Hospital for evaluation of her abdominal pain. Initial abdominal x-ray series were obtained which revealed air fluid level with possible obstruction. Her initial diagnosis was Small Bowel Obstruction with Dehydration and Ms. Dorsey was directly admitted to the Intensive Care Unit where she received emergency Surgical and Infectious Disease consultation. During her hospital stay of 7-16-04 to 8-11-04, Ms. Dorsey underwent an Exploratory Laparotomy which revealed perforated cecal diverticula, acute necrotizing appendicitis, severe acute peritonitis with aspects of abscess formation, and she was requires to undergo a right colectomy. Her postoperative course was complicated by profound anemia requiring blood transfusions, severe respiratory distress requiring prolonged intubation, persistent fevers, hyperdynamic sepsis, bedside trachesotomy, tube feedings, and acute renal failure. Ms. Dorsey was subsequently transferred by Kindred Hospital (8-12-04 to 8-18-04) and Illinois Masonic Hospital (8-18-04 to 9-11-04) for ongoing care.

Ms. Dorsey was transferred to Glenshire Nursing & Rehabilitation Center on September 11, 2004. Her admitting History & Physical examination revealed the following diagnoses: 1) Sepsis, continue antibiotics; 2) Dysphagia, GI feeling; 3) Respiratory Failure, Ventilatory support; 4) Anemia, Epogen; 5) Decubiti Ulcer, wound care, and 6) Hypertension/ Renal Failure.

Ms. Dorsey was emergently admitted to St. James Hospital on September 17th after an apparent witnessed cardiopulmonary arrest during her hemodialysis session. She died on September 18, 2004. Her death certificate lists Septic Shock as the cause of death, with contributing causes of perforated bowels and kidney failure.

It is my opinion to a reasonable degree of medical certainty that the defendant West Suburban Medical Center violated the standard of care by not obtaining the recommended surgical consultation and by inappropriately discharging a medically unstable patient. Further, the defendant West Suburban Medical Center's physician and nursing staff violated the standard of care by failing to notify Dr. Staff of the patient's unstable and deteriorating condition, such as her developing a fever and increasing white blood cell count.

It is my opinion to a reasonable degree of medical certainty that Dr. Thomas Staff violated the standard of care by not obtaining a surgical consultation for Ms. Dorsey. Further, Dr. Staff violated the standard of care by not specifying criteria for preventing Ms. Dorsey's unsafe discharge in an unstable condition, such as fever, an elevated white blood cell count, and/or increasing pain.

It is my opinion to a reasonable degree of medical certainty that Dr. Mark Loafman violated the standard of care by not investigating the cause of Ms. Dorsey's signs and symptoms of hemodynamic compromise, including low blood pressure and elevated heart rate. Dr. Loafman violated the standard of care by not performing a physical examination, and by not ordering any diagnostic tests, which tests would have shown the need for surgical consultation.

To a reasonable degree of medical certainty, as a direct and proximate result of the aforesaid violations of the standard of care, Ms. Dorsey sustained an unacceptable delay in diagnosis, which tragically resulted in Ms. Dorsey experiencing and suffering the major complications of a perforated necrotic appendix. Based upon a reasonable degree of medical certainty, Ms. Dorsey could have avoided her complicated medical and surgical course had a timely surgical evaluation been obtained, with the likely diagnosis of acute appendicitis being appropriately treated by an appendectomy. It is my opinion to a reasonable degree of medical certainty that the aforesaid deviations from the standard of care proximately caused Ms. Dorsey's unfortunate death.

_____
Thomas M. Naughton, M.D., M.P.H.
Clinical Associate Professor
Division of Geriatrics and the Department of Family & Community Medicine
The Medical College of Wisconsin